IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, **Plaintiff,** v. [3] OLUWASEUN ADELEKAN, **Defendant.** | CRIMINAL NO. 21-395-3 (RAM) |

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is the Defendant Oluwaseun Adelekan's ("Defendant" or "Mr. Adelekan") *Informative Motion* ("*Motion*") and the United States of America's (the "Government") *Response in Opposition*. (Docket Nos. 343 and 361, respectively). For the following reasons, the *Motion* is **DENIED IN PART.**

### I.    BACKGROUND

**A. Criminal Case 19-cr-291 (LAP) (S.D.N.Y.)[1]**

On April 23, 2019, Mr. Adelekan was indicted in a multi-defendant wire fraud and money laundering case in the Southern District of New York ("SDNY Case"). (Docket No. 2). One of his co-defendants in the instant case, Temitope Omotayo ("Omotayo"), was also charged in the SDNY Case, and both Mr. Adelekan and Mr. Omotayo were arrested on April 25, 2019 and released on bond.

---

[1] References to docket entries in this subsection will only refer to docket entries in United States v. Adelekan, et al., 19-cr-291 (LAP) (S.D.N.Y.). All subsequent references to the record will pertain to the instant case, United States v. Baiyewu, et al., 21-cr-395 (RAM) (D.P.R.).

(Docket Nos. 31 and 48). Superseding indictments were returned on against these defendants and their co-defendants on July 30, 2019, and, as relevant here, September 9, 2021 (the "SDNY Indictment"). (Docket Nos. 106 and 296). The SDNY Indictment charged Mr. Adelekan, Mr. Omotayo, and their SDNY Case co-defendants with offenses beginning in approximately July 2016 through April 2019.

A little over a month after the SDNY Indictment was returned, trial began. (Docket No. 387). On October 26, 2021, Mr. Adelekan was convicted of all counts he was charged with—that is, Counts One, Two, and Three of the Fourth Superseding Indictment. (Docket Nos. 296 and 397 at 153-56).

### B. Additional Investigations

The Government alleges that the United States Postal Inspection Service ("USPIS") and the Department of Justice's Consumer Protection Branch ("CPB") continued to investigate Messrs. Adelekan and Omotayo. Ultimately, the USPIS and the CPB discovered alleged criminal activity that, for the most part, began in 2020 and after the operative term of the SDNY Indictment. *See* (Docket No. 314 at 3-4). In 2021, the Federal Bureau of Investigation ("FBI") began investigating Oluwasegun Baiyewu ("Baiyewu"), another co-defendant in the instant case.

Per the Government's *Response in Opposition*, federal investigators ultimately discovered that Messrs. Adelekan,

Omotayo, and Baiyewu, along with their co-defendants in the case at bar, "worked together from spring 2020 through fall 2021." Id. at 4.

### C. Criminal Case 21-cr-395 (RAM) (D.P.R.)

On May 31, 2023, a grand jury in the District of Puerto Rico returned a single-count *Superseding Indictment* charging Mr. Adelekan and four co-defendants with conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(h) and 3147. (Docket No. 86). The operative period of the *Superseding Indictment* is from on or about May 2020 through on or about October 2021. Id. ¶ 19. Among other allegations, the *Superseding Indictment* claims that:

> On or about April 23, 2019, OLUWASEUN ADELEKAN and TEMITOPE OMOTAYO were charged by indictment in the United States District Court for the Southern District of New York, Criminal Case No. 19-00291. By orders dated April 25, 2019, the District Court in the Southern District of New York permitted ADELEKAN and OMOTAYO to remain on release status, that is, out of prison, while they awaited trial. Those orders notified ADELEKAN and OMOTAYO, respectively, of the potential effect of committing an offense while on pretrial release.

Id. ¶ 17. The *Superseding Indictment* also notes that Mr. Adelekan and Mr. Omotayo lived at the same residence in approximately September 2018 and June through July 2020, and that Mr. Adelekan was on pretrial release in August 2020. Id. ¶¶ 31, 34, 59, 63.

Defendant, proceeding *pro se*,[2] filed the pending *Motion* on August 6, 2024. (Docket No. 343). First, he claims that the *Superseding Indictment* should be dismissed because the grand jury was prejudiced by the allegations about Mr. Adelekan's pretrial release status. Id. at 1. Specifically, he argues that the Government fraudulently conspired against him and presented perjured testimony to the grand jury. Id. at 1-2. Second, Defendant contends the *Superseding Indictment* was returned by an out-of-term grand jury. Id. at 2. Third, he references other motions filed regarding conditions at Metropolitan Detention Facility ("MDC") Guaynabo, where he is currently incarcerated. Id. Finally, he contends that venue in Puerto Rico is improper. Id. at 3.

The Government timely responded on August 20, 2024. (Docket No. 361). It claims that that Mr. Adelekan cannot show that (1) the Government presented a falsehood to the grand jury or (2) that he was prejudiced by the allegation of a section 3147 violation. Id. at 8. Additionally, the Government avers that, as to Defendant's out-of-term jury argument, the *Motion* is moot because the *Indictment* and *Superseding Indictment* were properly returned

---

[2] The pleadings of *pro se* litigants are to be liberally construed, but their motions must nevertheless meet certain fundamental requirements. *See* Aponte-Ramos v. United States, 391 F. Supp. 3d 183, 192 (D.P.R. 2019) (citing United States v. Nishnianidze, 342 F.3d 6, 18 (1st Cir. 2003)).

by two separate grand juries. Id. at 2 n.2. The Government did not, however, respond to Mr. Adelekan's venue argument.

On September 12, 2024, Defendant sought leave to reply. (Docket No. 392-1). However, his reply motions, which had been submitted to the Court by standby counsel, were untimely. *See* (Docket No. 397). Mr. Adelekan then submitted a *Reply* by mail. (Docket No. 402). In it, he reiterates his arguments regarding section 3147. (Docket No. 402-1). He also contends that the Government has conceded the venue issue, and that United States v. Abbas, 100 F.4th 267 (1st Cir. 2024) controls the outcome of the case. (Docket No. 402-3).

While the *Motion* was pending, Mr. Adelekan filed a bevy of additional *pro se* motions. *See* (Docket Nos. 354, 359, 360, 371-72, 383-87, 401, and 403). One of these motions is centered on the grand jury process and focuses on the out-of-term grand jury argument ("*Grand Jury Motion*"). (Docket No. 386). The Government was ordered to respond to the *Grand Jury Motion* by September 26, 2024. (Docket No. 394).

## II.  DISCUSSION

### A. The Defendant's *Reply* at Docket No. 402 is timely pursuant to the prison mailbox rule

Generally, replies must be filed with leave of the court within seven days of the service of an opposition to the original

motion. *See* L. Crim. R. 147(c). Here, the Government's *Response in Opposition* was filed on August 20, 2024, whereas the *Reply* appears to have been received and filed by the Clerk's Office on September 18, 2024.[3] (Docket No. 402-2).

The so-called prison mailbox rule permits a *pro se* plaintiff's motion to be considered "filed on the date that it is deposited in the prison's internal mail-system for forwarding to the district court, provided that the prisoner utilizes, if available, the prison's system for recording legal mail." Morales-Rivera v. United States, 184 F.3d 109, 109 (1st Cir. 1999). Although the rule originated from the filing of notices of appeal, *see* Houston v. Lack, 487 U.S. 266, 270-76 (1988), it "has been applied to *pro se* prisoner filings outside of the appellate sphere." Grady v. United States, 269 F.3d 913, 916 (8th Cir. 2001).

Given that Mr. Adelekan is currently incarcerated and representing himself *pro se*, the Court will permit him to file motions pursuant to the prison mailbox rule. His original replies, filed at Docket Nos. 391-1 and 393-1, were not timely because they were handed to standby counsel for filing and not mailed. *See* Cruz-Rivera v. United States, 2023 WL 6294203, at *3 (D.P.R. 2023) (finding prison mailbox rule did not apply when defendant filed a

---

[3] The docket entry appears to indicate the *Reply* was filed on September 13, 2024, however. (Docket No. 402).

petition through a third party rather than using the prison mail system). However, the *Reply* filed at Docket No. 402 is dated August 26, 2024. Defendant also included certifications that he made hand delivery to his institution's staff in accordance with <u>Lack</u> on that date. Thus, the *Reply* is deemed to have been filed on August 26, 2024 in accordance with the prison mailbox rule.[4] *See* <u>Herbert v. Dickhaut</u>, 724 F. Supp. 2d 132, 136-37 (D. Mass. 2010) (relying on the date a motion was signed and dated as the date of the filing and collecting cases). The Court finds that relying on the date of signing is appropriate given Mr. Adelekan's representations that there have been mailroom delays at MDC Guaynabo. *See* (Docket Nos. 360 and 403 at 2).

## B. The request to dismiss the indictment based on out-of-term grand jury is held in abeyance

On September 10, 2024, Defendant filed his *Grand Jury Motion* requesting the orders of empanelment and extensions of grand juries in this district. (Docket No. 386). In it, he avers that he needs this information to support his motion to dismiss the indictment on the basis that it was returned by an out-of-term grand jury. <u>Id.</u> at 1. Although the Government did briefly respond to this argument in its *Response in Opposition*, the Court will **HOLD THE**

---

[4] The Court notes, however, that in a subsequent motion the Defendant stated that the replies were filed on August 28, 2024. *See* (Docket No. 403 at 2).

**MATTER IN ABEYANCE** until the Government responds to the *Grand Jury Motion*.

### C. Requests regarding prison conditions are outside the scope of the instant case

Mr. Adelekan also requested a "surprise visit and arrest and prosecution" of the warden and staff of MDC Guaynabo because he alleges he has been subject to illegal conditions while confined. (Docket No. 343 at 2). As the Court has previously noted in response to similar requests by the Defendant, such matters are outside the scope of the criminal case and are best reserved for a separate civil action. *See* (Docket No. 355). Thus, this request is **DENIED.**

### D. Defendant has not met his burden to show that there was prosecutorial misconduct before the grand jury

The grand jury is an essentially independent institution that operates under judicial supervision; thus, "courts afford grand jury proceedings a presumption of regularity." United States v. Flemmi, 245 F.3d 24, 28 (1st Cir. 2001) (citing United States v. Johnson, 319 U.S. 503, 513 (1943)). The presumption attaches to superseding indictments as well. *See* Flemmi, 245 F.3d at 28. In general, therefore, an "indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits." Costello v. United States, 350 U.S. 359, 363 (1956). Although "prosecutors do

not have carte blanche in grand jury matters," the party challenging the presumption of regularity "must shoulder a heavy burden." Flemmi, 2475 F.3d at 28 (citations omitted). A defect requiring dismissal of the indictment must be "so fundamental that it causes the grand jury no longer to be a grand jury, or the indictment no longer to be an indictment." Midland Asphalt Corp. v. United States, 489 U.S. 794, 802 (1989).

Where, as here, a defendant alleges that prosecutorial misconduct has affected the grand jury, there are two types of error. Constitutional error occurs when the "structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice." Bank of Nova Scotia v. United States, 487 U.S. 250, 257 (1988) (referring to cases involving race- or sex-based discrimination in the selection of grand jurors as examples of errors of constitutional magnitude). Nonconstitutional error is adjudged under the harmless error standard laid out in Bank of Nova Scotia, where the Supreme Court held that a district court has:

> no authority to dismiss the indictment on the
> basis of prosecutorial misconduct absent a
> finding that [the defendant was] prejudiced by
> such misconduct. The prejudicial inquiry must
> focus on whether any violations had an effect
> on the grand jury's decision to indict. If
> violations did substantially influence this

> decision, or if there is grave doubt that the
> decision to indict was free from such
> substantial influence, the violations cannot
> be deemed harmless.

Id., 487 U.S. at 263. The defendant bears the burden of showing

that he was prejudiced. United States v. Jackson, 58 F.4th 541 at

554 (1st Cir. 2023). Because he cannot do so, as further discussed

below, his *Motion* must be **DENIED** as to this request.

      i.   Inclusion of allegations related to section 3147 is
proper

Here, Defendant does not appear to raise any claims that there

was constitutional error. Thus, the Court assesses whether

nonconstitutional error was committed during grand jury

proceedings. Mr. Adelekan alleges that section "3147 was inserted

to mislead, confuse, prejudice, and bias the grand jury." (Docket

No. 402-1 at 2). In support of this argument, he alleges that the

section is neither a crime nor element of the offense, and does

not need to be alleged in the *Superseding Indictment*. Id. at 1.

An indictment "must be a plain, concise, and definite written

statement of the essential facts constituting the offense

charged." Fed. R. Crim. P. 7(c)(1). It should also include the

"official or customary citation of the statute, rule, regulation,

or other provision of law that the defendant is alleged to have

violated." Id. Specifically, the indictment must set out the crime

and each of its elements. *See* United States v. Miller, 471 U.S.

130, 136 (1985); <u>Almendárez-Torres v. United States</u>, 523 U.S. 224,
228 (1998). Crucially, "an indictment must do more than simply
repeat the language of the criminal statute." <u>Russell v. United</u>
<u>States</u>, 369 U.S. 749, 764 (1962). That being said, "the right to
a grand jury is not normally violated by the fact that the
indictment alleges more crimes or other means of committing the
same crime." <u>Id.</u> The remedy for surplusage is to strike such
language from the indictment, rather than dismissal of the
indictment. *See* Fed. R. Crim. P. 7(d).[5]

At issue is whether the Government's inclusion of section
3147 and references to Mr. Adelekan's pretrial release status
constituted prosecutorial misconduct and, if so, whether it
prejudiced the grand jury. The answer to that question hinges on
whether section 3147 constitutes a crime or an element of the crime
that must be included in the indictment. Section 3147 provides
that:

> A person convicted of an offense while
> released under this chapter shall be
> sentenced, in addition to the sentence
> prescribed for the offense to—(1) a term of
> imprisonment of not more than ten years if the

---

[5] The rule is intended to protect "the defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial." Fed. R. Crim. P. 7(d) advisory committee's note to 1944 adoption. *But see* <u>United States v. Hedgepeth</u>, 434 F.3d 609, 612-13 (3d Cir. 2006) ("[I]nformation that is prejudicial, yet relevant to the indictment, must be included for any future conviction to stand[,] and information that is irrelevant need not be struck if there is no evidence that the defendant was prejudiced by its inclusion).

> offense is a felony . . .. A term of
> imprisonment imposed under this section shall
> be consecutive to any other sentence of
> imprisonment.

18 U.S.C. § 3147. The statute "is designed to deter the commission
of additional offenses by a defendant out on bail." United States
v. Randall, 287 F.3d 27, 29 (1st Cir. 2002).

In dicta, the First Circuit has noted that "§ 3147 is not a
count of conviction." Id. at 31. The other circuits that have
addressed the issue generally agree that section 3147 is not a
standalone, separate offense that would mandate notice in an
indictment. See United States v. Confredo, 528 F.3d 143, 155 (2d
Cir. 2008); United States v. Di Pasquale, 864 F.2d 271, 279-80 (3d
Cir. 1988); United States v. Jackson, 891 F.2d 1151, 1152-53 (5th
Cir. 1989); United States v. Peithman, 917 F.3d 635, 645-46 (8th
Cir. 2019); United States v. Patterson, 820 F.2d 1524, 1526 (9th
Cir. 1987); United States v. Horner, 769 Fed. App'x 528, 536 (10th
Cir. 2019). But see United States v. Samuel, 296 F.3d 1169, 1173
(D.C. Cir. 2002) (expressing uncertainty as to whether section
3147 creates a separate offense and comparing provision to 18
U.S.C. § 924(c)); United States v. Sink, 851 F.2d 1120, 1125 (8th
Cir. 1988) (Heaney, J., concurring) (recognizing circuit precedent
but noting that section 3147 could be construed as a substantive

offense which must be charged in the indictment and presented to a grand jury).

However, section 3147 may constitute an important element of a crime that must be alleged in the indictment. "Any fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." Alleyne v. United States, 570 U.S. 99, 103 (2013) (citing Apprendi v. New Jersey, 530 U.S. 466, 483 n.10 (2000)). "In federal prosecutions, **such facts must also be charged in the indictment.**" United States v. Cotton, 535 U.S. 625, 627 (2002) (citations omitted and emphasis added). The distinction between "elements" and "sentencing factors" is "constitutionally novel and elusive." Apprendi, 530 U.S. at 494. Nevertheless, the ultimate question is whether the "required finding expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict[.]" Id.

If Defendant were convicted in the instant case, section 3147 could potentially result in an **additional** penalty of ten years, to be served **consecutively** to any sentence imposed for the money laundering conspiracy. Several courts have found that such an enhancement implicates Apprendi. *See* United States v. Schneider, 2024 WL 3567420, at *2 (D.S.D. 2024) (denying motion to dismiss because the "charge was properly submitted to the grand jury as

required by Apprendi"); United States v. Lawson, 2002 WL 992369,

at *2 (W.D. Va. 2002) (declining to enhance sentence pursuant to

section 3147 "in the absence of an indictment setting forth its

violation."). In the First Circuit, the leading authority on this

issue is Randall, 287 F.3d 27. The defendant in Randall contended

that Apprendi had been violated because the question of whether he

committed a crime on pretrial release was not submitted to the

jury. Id. at 29. The panel held that because the district judge

had "carefully" imposed a total sentence that was within the

guideline range of the base offense level (and, therefore, within

the statutory maximum of the underlying crime), no Apprendi

violation had occurred. Id. at 30. Although the First Circuit has

not addressed the question of whether Apprendi is violated when a

section 3147 enhancement takes a total sentence above the statutory

maximum, at least three other circuits have concluded that it does.

See United States v. Perez, 86 F.4th 1311, 1319 (11th Cir. 2023);

United States v. Lewis, 660 F.3d at 189, 195; United States v.

Confredo, 528 F.3d 143, 155 (2d Cir. 2008). At this relatively

early stage of the criminal proceedings, there is no indication of

whether Defendant will be convicted and what his prospective

Guidelines range for the money laundering conspiracy count may be.

Given that dearth of information, the Court finds that the section

3147 is an element that must be charged in the indictment because

it could potentially subject Defendant to total sentence above the statutory maximum for a money laundering conspiracy offense.

Moreover, it is not sufficient to only refer to section 3147. The Government must also include the factual basis for an enhancement under that section to avoid running afoul of Apprendi and its progeny. *See, e.g.*, United States v. Gillon, 348 F.3d 755, 758 (8th Cir. 2003) ("assuming that the factual basis for a § 3147 enhancement should have been alleged in the indictment"). *Cf.* United States v. Youngworth, 1989 WL 129262, at *4 (W.D.N.C. 1989) (noting that "the Government **must** state in the Indictment which [federal] offense has been violated" to adequately allege elements of section 3147 offense) (emphasis added). Thus, the Government was required to include information about the federal offense that Defendant previously committed, as well as his status on pretrial release during the operative period of the *Superseding Indictment*. Such information is therefore appropriately included in the charging document.

There are also pragmatic reasons why the Government may have chosen to include section 3147 allegations in the *Superseding Indictment*. Inclusion now may prevent future challenges under Apprendi and Alleyne. *See, e.g.*, United States v. Trahan, 111 F.4th 185, 197 (1st Cir. 2024) (involving Alleyne challenge by defendant who was not charged with violating 3147).

Even assuming that section 3147 does not implicate Apprendi, it may still be advisable for the Government to allege violations of the statute and relevant supporting facts in the indictment. Such an allegation can provide fair notice to a defendant and stave off a challenge that he was not sufficiently informed of sentencing consequences. *See* United States v. DeSimone, 735 F. Supp. 2d 477, 487 (D.R.I. 2010) (noting, however, that it is "common practice" not to charge violations of section 3147 in the indictment); Alleyne, 570 U.S. 99 at 113-14 ("Defining facts that increase a mandatory statutory minimum to be part of the substantive offense enables the defendant to predict the legally applicable penalty from the face of the indictment."). *Cf.* United States v. Cormier, 226 F.R.D. 23, 26 (D. Me. 2005) (stating that indictment's reference to specific penalty provisions places the defendant on fair notice of higher statutory penalties).

Finally, even if the inclusion of references to section 3147 was gratuitous, it cannot be said to have prejudiced the grand jury. In a case involving more egregious facts, the First Circuit held that a defendant could not show he was prejudiced even though the government "engaged in a very sloppy presentation" and a testifying agent "**made a statement about a prior conviction [that was] incorrect.**" Jackson, 58 F.4th at 554 (emphasis added; internal quotations omitted; alteration in original) (affirming

conviction); *cf.* United States v. Brennick, 405 F.3d 96, 99 (1st Cir. 2005) (finding disclosure of defendant's drug problem to grand jury "inappropriate" but harmless due to later conviction at trial).

Mr. Adelekan also cannot establish that he was prejudiced by the inclusion of references to pretrial release. His *Motion* provides no basis for finding that the Government committed misconduct, that any such misconduct substantially influenced the decision to indict, or that grave doubt exists as to whether the decision to return a true bill was free from substantial undue influence. *See, e.g.*, In re U.S., 441 F.3d 44, 60 n.14 (1st Cir. 2006) (finding no showing of impropriety had been made when there was no claim that a prosecutor made flagrantly inflammatory and improper comments to the grand jury). Thus, he has not carried his heavy burden to establish there was nonconstitutional error committed by the Government.

    ii.  <u>Defendant cannot establish that perjured testimony was presented to the grand jury</u>

Defendant claims that he was not on pretrial release in the SDNY Case, and therefore any related testimony was "[f]raudulent [p]erjury to prejudice and bias the Grand Jury" against him. (Docket No. 343 at 2). It is true that, when the government "elicit[s] false or misleading testimony in order to obtain an

indictment, kn[ows] that the relevant testimony was false, [or] fail[s] to correct the falsity," the government "distort[s] the integrity of the grand jury proceeding." United States v. Jackson, 58 F.4th 541, 553-54 (1st Cir. 2023).

However, there is no indication in this case that the Government presented perjured testimony or false evidence to the grand jury. Mr. Adelekan was, indeed, on pretrial release after he was arrested in the SDNY Case on April 25, 2019. *See* United States v. Adelekan, et al., 19-cr-291 (LAP) (S.D.N.Y.) (Docket No. 31) (regarding entry of appearance bond and imposition of pretrial conditions). He was convicted on October 26, 2021. Id. (Docket No. 397 at 153-56). Thus, he was on pretrial release between April 2019 and October 2021. The Government alleges in the *Superseding Indictment* that the events of the instant case occurred between May 2020 and October 2021, which would be during Defendant's stint on pretrial release. He cannot meet his burden to establish that any perjury or falsehood was presented to the grand jury on this issue.

### iii. Defendant misconstrues section 3147

Defendant also contends that he was neither charged nor convicted while he was on pretrial release, and therefore section 3147 does not apply to him. (Docket No. 343 at 1). This argument misconstrues the statute and misreads First Circuit precedent.

"Section 3147 provides, without exception, that a defendant 'convicted of *an offense* committed while released under this chapter [Chapter 207] *shall* be sentenced, in addition to the sentence prescribed for that offense to . . . a term of imprisonment for not more than ten years if the crime is a felony[.]" United States v. Chuong Van Duong, 665 F.3d 364, 366-67 (1st Cir. 2012) (emphases and alterations in original). Defendant was released under Chapter 207[6] while on bond in his SDNY Case. During that time, he is alleged to have committed an offense—the instant money laundering conspiracy offense charged in the *Superseding Indictment*. If and only if he is convicted of that offense, an additional term of imprisonment of up to ten years can be imposed on top of any sentence imposed for the money laundering conspiracy.

### E. The District of Puerto Rico is an appropriate venue for the money laundering conspiracy

Mr. Adelekan also avers that venue is improper because there was no conspiracy to launder money in Puerto Rico. (Docket No. 343 at 3). The Government failed to respond, and accordingly has waived any objection to that portion of Defendant's *Motion*. *See* L. Civ. R. 7(b); L. Crim. R. 112 (extending L. Civ. R. 7 to criminal cases). In the District of Puerto Rico, failure to so object allows

---

[6] Referring to 18 U.S.C. §§ 3141 *et seq.*

the district judge to "summarily grant the unopposed motion, 'at *least when the result does not clearly offend equity*.'" Rodriguez-Salgado v. Somoza-Colombiani, 937 F. Supp. 2d 206, 210-11 (D.P.R. 2013) (emphasis in original) (quoting NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 7 (1st Cir. 2002)) (noting, however, that the rule does not apply to motions for summary judgment). Dismissing an indictment "directly encroaches upon the fundamental role of the grand jury" and that "power is appropriately reserved . . . for extremely limited circumstances." Whitehouse v. U.S. Dist. Court for the Dist. Of R.I., 53 F.3d 1349, 1360 (1st Cir. 1995). Accordingly, the Court cannot rubberstamp the unopposed section of Mr. Adelekan's *Motion* and will proceed to evaluating it on the merits.

The Court construes Defendant's motion as one challenging improper venue, pursuant to Fed. R. Crim. P. 12(b)(3)(A)(i). When venue is challenged, the government bears the burden by a preponderance of the evidence to establish that venue is proper. United States v. Salinas, 373 F.3d 161, 163 (1st Cir. 2004).

The Constitution provides that criminal trials "shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, . . . shall be at such Place or Places as the Congress may by Law have directed." U.S. Const. art. III, § 2, cl. 3. Fed. R. Crim. P. 18 further mandates that

the government "prosecute an offense in a district where the offense was committed." Id. Courts must honor specific venue provisions in statutes where they exist. Salinas, 373 F.3d at 164.

Defendant is charged with money laundering conspiracy in violation of 18 U.S.C. § 1956(h). Congress has provided that venue for prosecutions under that section of the United States Code "may be brought in the district where venue would lie for the completed offense under paragraph . . . or in any other district where an act in furtherance of the attempt or conspiracy took place." 18 U.S.C. § 1956(i)(2).

Defendant correctly states that the Court must follow First Circuit precedent regarding venue for money laundering conspiracy and cites to Abbas, 100 F.4th 267. The Abbas panel affirmed a conviction for money laundering conspiracy when the jury decided by a preponderance of the evidence **that at least part of the conspiracy took place in the district** where the trial was held, namely the District of Massachusetts. Id. at 290. Overt acts in furtherance of the conspiracy included emails sent into Massachusetts to induce a romance scam victim to wire funds outside of the district. The First Circuit explained that the "emails were overt acts that furthered the conspiracy because the steps a conspirator takes to produce the proceeds [that are] subsequently laundered furthers a money laundering conspiracy." Id.

Here, the Government alleged in the *Superseding Indictment* that a Puerto Rican company, G.I., was the victim of a business email compromise scam. (Docket No. 86 ¶ 26).[7] G.I., like the victim in Abbas, received an email from scammers and initiated a payment originating from an account within the district to an account outside of the district. Id. ¶ 27. This payment allegedly constituted proceeds that were eventually laundered by unindicted co-conspirators and Mr. Baiyewu. Id. ¶¶ 28-30. Thus, venue for the money laundering conspiracy in Puerto Rico is proper since at least part of the conspiracy occurred in the District of Puerto Rico.

Mr. Adelekan contends that he never conspired to launder any of the funds related to victim company G.I. *See* (Docket No. 343 at 3). He accordingly appears to argue that venue is therefore improper as to him. The Court notes that it seems the Government may have charged a hub-and-spoke conspiracy. *See* United States v. Abdelaziz, 68 F.4th 1, 48-49 (1st Cir. 2023) (describing hub-and-spoke structure and charging requirements). Venue remains proper where at least part of conspiracy occurred, even if "there was no evidence that the defendant had entered that district or that the

---

[7] When evaluating a motion to dismiss the indictment, "courts take the facts alleged in the indictment as true, mindful that 'the question is not whether the government has presented enough evidence to support the charge, but solely whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense.'" United States v. Ngige, 780 F.3d 497, 502 (1st Cir. 2015) (quoting United States v. Savarese, 686 F.3d 1, 7 (1st Cir. 2012)).

conspiracy was formed there." United States v. Rodriguez-Moreno, 526 U.S. 275, 281-82 (1999) (quoting Hyde v. United States, 225 U.S. 347, 356-57 (1912)); *see also* United States v. Approximately $659,990.83, 2008 WL 794538, at *6 (E.D. Wis. 2008) (finding venue proper in district where some overt acts in furtherance of a hub-and-spoke conspiracy occurred).

Defendant's *Motion* is therefore **DENIED** as to the request to dismiss for improper venue.

### III. CONCLUSION

For the foregoing reasons, the Court **ORDERS** that Defendant Oluwaseun Adelekan's *Informative Motion* at Docket No. 343 is hereby **DENIED IN PART**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 23rd day of September 2024.

s/Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE