IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| **Plaintiff,** | |
| v. | CRIMINAL NO. 21-395-3 (RAM) |
| [3] OLUWASEUN ADELEKAN, | |
| **Defendant.** | |

<u>OPINION AND ORDER</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is the Defendant Oluwaseun Adelekan's ("Defendant" or "Adelekan") *Motion to Reveal the Deal* ("*Motion*") and the United States of America's (the "Government") *Response in Opposition.* (Docket Nos. 359 and 398, respectively). Also pending before the Court is Defendant's *Motion to Sever Defendant* ("*Severance Motion*") and the Government's *Response in Opposition.* (Docket Nos. 385 and 408). For the following reasons, both the *Motion* and *Severance Motion* are **DENIED**.

**I.    BACKGROUND**

**A. Criminal Case 19-cr-291 (LAP) (S.D.N.Y.)[1]**

On April 23, 2019, Mr. Adelekan was indicted in a multi-defendant wire fraud and money laundering case in the Southern District of New York ("SDNY Case"). (Docket No. 2). Defendant was

---

[1] References to docket entries in this subsection will only refer to docket entries in <u>United States v. Adelekan, et al.</u>, 19-cr-291 (LAP) (S.D.N.Y.). All subsequent references to the record will pertain to the instant case, <u>United States v. Baiyewu, et al.</u>, 21-cr-395 (RAM) (D.P.R.).

convicted by a jury of all the counts that he was charged with, and ultimately sentenced to 108 months' imprisonment on May 25, 2022. (Docket Nos. 296, 397 at 153-56, and 516). Defendant is currently incarcerated at Metropolitan Detention Center ("MDC") Guaynabo, and his estimated release date is February 10, 2029, as of the date of this *Opinion and Order*.[2]

**B. Criminal Case 21-cr-395 (RAM) (D.P.R.)**

On October 20, 2021, a grand jury in the District of Puerto Rico returned a single-count *Indictment* charging Oluwasegun Baiyewu ("Baiyewu") with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). (Docket No. 5). About a year and a half later, on March 31, 2023, the grand jury returned a single-count *Superseding Indictment* charging Mr. Adelekan and four co-defendants, including Mr. Baiyewu, with conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(h) and 3147. (Docket No. 86). These charges arose out of events occurring between May 2020 and October 2021. Id. ¶ 19.

The *Superseding Indictment* alleges numerous schemes supporting the money laundering conspiracy. One of them was a business email compromise scam that targeted victim G.I., a Puerto Rican company. Id. ¶ 26. Funds that were sent by G.I. to a bank

___
[2]    *See* Federal Bureau of Prisons, "Find an inmate," https://www.bop.gov/inmateloc/ (last accessed September 27, 2024).

account controlled by unindicted co-conspirators were ultimately used to pay for costs and fees associated with two vehicles purchased by Co-Conspirator 5 ("CC-5"). Id. ¶ 27-29. Mr. Baiyewu then facilitated the export of those vehicles to Lagos, Nigeria. Id. ¶ 30.

Because Mr. Adelekan was serving his term of imprisonment for the SDNY Case, the Government sought a writ of habeas corpus *ad prosequendum* to facilitate his transfer to the District of Puerto Rico, which was issued. (Docket Nos. 101 and 104). He initially appeared in this district on September 27, 2023, and was arraigned on October 12, 2023. (Docket Nos. 165 and 173).

Defendant, proceeding *pro se*,[3] filed the pending *Motion* on August 11, 2024. (Docket No. 359). The *Motion* puts forth two primary arguments.[4] First, Defendant claims that victim company G.I. was part of a government sting operation, and he requests what appears to be impeachment evidence related to that company. Id. ¶¶ 3-4, 6-9. Second, Mr. Adelekan requests that his case be severed from his co-defendants because he claims his

---

[3] The pleadings of *pro se* litigants are to be liberally construed, but their motions must nevertheless meet certain fundamental requirements. *See* Aponte-Ramos v. United States, 391 F. Supp. 3d 183, 192 (D.P.R. 2019) (citing United States v. Nishnianidze, 342 F.3d 6, 18 (1st Cir. 2003)).

[4] Defendant also demanded any response in opposition from the Government be filed within three days of service. However, L. Crim. R. 147(b) provides that parties may have fourteen days to file a written opposition. Id.

constitutional right to a speedy trial has been violated. Id. ¶ 5.
Relatedly, he asks that jury trial be set within thirty days. Id.

After requesting and receiving an extension of time, the
Government responded on September 13, 2024. (Docket Nos. 373, 378
and 398). The *Response in Opposition* avers that, as to Defendant's
discovery requests, the Government has been compliant, but that
any witness statements do not need to be disclosed at this moment.
(Docket No. 398 at 8-9, 11). The Government also avers that the
speedy trial clock has been tolled due to pending motions filed by
Mr. Adelekan and his co-defendants, and that severance is
unwarranted. Id. at 9-13.

While the *Motion* was pending, Mr. Adelekan filed a bevy of
additional *pro se* motions. *See* (Docket Nos. 360, 371-72, 383-87,
401, and 403). One of these motions, the *Severance Motion*,
reiterates his severance argument and expands upon it. (Docket No.
385). Additionally, the Government responded to the *Severance
Motion* on September 26, 2024, (Docket No. 408). Because the matter
has been fully briefed and relates to the same issues in the
instant *Motion*, the Court will also address those arguments in
this Opinion and Order. In the *Severance Motion*, Defendant explains
that he is seeking severance to accelerate his trial date, prevent
prejudicial spillover, and protect his right to be tried only on
evidence properly before the jury. (Docket No. 385 at 1). He also

claims that his conditions of incarceration are intolerable and requests an evidentiary hearing regarding conditions at MDC Guaynabo. Id. at 2.

## II.  DISCUSSION

### A. Discovery Requests

Defendant claims that victim company G.I. is a "Federal Sting front company" and, accordingly, that it has or will receive the benefit of cooperation agreements or U.S.S.G. § 5K1.1. (Docket No. 395 at 1, 3). He requests that the Government "disclose any and all pretrial diversions, immunities, witness protection, [and] monetary payments." Id. at 3. Mr. Adelekan also seeks information about G.I.'s corporate standing and information about the credibility of potential witnesses. Id. In addition to disclosure, Defendant requests that the Court sanction the Assistant United States Attorneys for their failure to previously disclose information. Id. The Government avers in its *Response in Opposition* that it has complied and intends to comply with its ongoing discovery obligations. (Docket No. 398 at 2-3).

Federal criminal discovery is broadly governed by Fed. R. Crim. P. 16; Brady v. Maryland, 373 U.S. 83 (1963) and its progeny; 18 U.S.C. § 3500 (the "Jencks Act"); and Fed. R. Crim. P. 26.2. Defendant appears to be requesting evidence pursuant to Giglio v. United States, 405 U.S. 150 (1972). Giglio requires the "disclosure

of information potentially useful to impeaching the credibility of
a government witness where that information is favorable and
material to guilt or punishment." Roe v. Lynch, 997 F.3d 80, 82
(1st Cir. 2021) (citing Giglio, 405 U.S. at 154-55). "[E]vidence
of a prior agreement with a government witness not to prosecute
that witness is generally considered impeachment material and
therefore discoverable under *Brady*." Tuesta Tora v. United States,
229 F.3d 1134 (Table) (1st Cir. 2000) (citations omitted). The
Government has an affirmative duty to produce exculpatory and
impeachment evidence "in a timely fashion." United States v.
Sepúlveda, 15 F.3d 1161, 1178 (1st Cir. 1993). Brady evidence—and,
therefore, Giglio evidence—should be disclosed in a "timeous
manner." United States v. Montoya, 844 F.3d 63, 71 (1st Cir. 2016).

By contrast, the Jencks Act and Rule 26.2 govern the recorded
statements of government witnesses. *See* 18 U.S.C. § 3500; Fed. R.
Crim. P. 26.2. However, these provisions are not a "pre-trial
discovery tool." United States v. Padilla-Galarza, 990 F.3d 60, 77
(1st Cir. 2021) (quotation omitted). A district court may not
compel the disclosure of statements of government witnesses before
the conclusion of their direct testimony. United States v.
Grandmont, 680 F.2d 867, 874 (1st Cir. 1982). This timing
requirement "is too well recognized to require elaboration."
United States v. Tejeda, 975 F.2d 210, 217 (1st Cir. 1992).

Although early, voluntary disclosure of Jencks materials is a "salutary practice," it is not required. *See* United States v. Capagnuolo, 592 F.2d 852, 859 n.3 (5th Cir. 1979). "The Jencks Act, 18 U.S.C. § 3500, in concert with Fed. R. Crim. P. 26.2, controls the production of certain witness statements in the government's possession." United States v. Marrero-Ortiz, 160 F.3d 768, 775 (1st Cir. 1998).

The First Circuit has not yet resolved the question of disclosure timing for witness statements that are exculpatory. *See* United States v. Casas, 356 F.3d 104, 116 n.2 (1st Cir. 2004) (noting, without resolving, a "potential conflict between Brady and the Jencks Act"); United States v. Kouri-Perez, 47 F. Supp. 2d 166, 173 (D.P.R. 1999) ("The First Circuit has not yet squarely addressed this issue"); *see also* United States v. Tribble, 559 F. Supp. 3d 41, 45-46 (D.P.R. 2021) (noting conflict between Brady and Jencks and discussing the ambit of the Jencks Act).

The Government claims that it would be premature to provide Giglio evidence now because "the court has not set a deadline for the discovery of Giglio material." (Docket No. 398 at 11). However, the Government does not need to wait for a deadline set by the Court, and it may—and must—produce Brady and Giglio information in the timely manner prescribed by the First Circuit. *See also* (Docket No. 173) (instructing Government to disclose exculpatory evidence

in a timely manner). However, the Court notes that a trial date
has not been set, so it cannot be said that the production has
approached untimeliness. *See* Montoya, 844 F.3d at 71 (noting that
the government was obligated to produce Brady material before
trial). The Court also acknowledges the discovery schedule that
has been proposed by the Government in light of Defendant's choice
to proceed *pro se*, and the need to appropriately provide discovery
to him while he is incarcerated at MDC Guaynabo. *See* (Docket No.
409). To the extent that Defendant requests statements that fall
within the ambit of the Jencks Act, the Court cannot order the
production of those statements at this time. *See* Grandmont, 680
F.2d at 874. The Government may choose to voluntarily disclose
Jencks Act material earlier than the statute requires, as is the
custom in this district, but the Court will not order it to do.
Finally, because no discovery violation has occurred, the Court
will not order sanctions. Defendant's request is therefore **DENIED**.

**B. Severance**

Defendant also avers that his constitutional speedy trial
rights have been violated, and he asks for severance of his case
from that of his co-defendants as well as a trial date within
thirty days. (Docket No. 359 at 2).

Rule 8 permits joinder of "2 or more defendants if they are
alleged to have participated in the same act or transaction, or in

the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). The First Circuit has explained that "[a] conspiracy count can be a sufficient connecting link between co-defendants and separate substantive offenses to permit their joinder in a single indictment." United States v. Martínez, 994 F.3d 1, 12 (1st Cir. 2021) (citation omitted) (alteration in original). Generally, defendants "who are indicted together should be tried together," and there is a presumption in favor of joinder. United States v. DeLeon, 187 F. 3d 60, 63 (1st Cir. 1999) (citations omitted). The rule is intended to "prevent inconsistent verdicts and to conserve judicial and prosecutorial resources." United States v. DeCologero, 530 F.3d 36, 52 (1st Cir. 2008).

However, Rule 14(a) permits district courts to order severance if "the joinder of . . . defendants in an indictment . . . appears to prejudice a defendant or the government[.]" Id. A defendant who seeks a separate trial from his co-defendants must make "a strong showing of evident prejudice." United States v. O'Bryant, 998 F.2d 21, 25 (1st Cir. 1993) (citations omitted). A district court may grant a severance motion "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United

States, 506 U.S. 534, 539 (1993). A defendant trying to meet this burden "must demonstrate prejudice so pervasive that it would be likely to effect a miscarriage of justice," which is "a difficult battle for a defendant to win." DeLeon, 187 F.3d at 63 (citations and internal quotation marks omitted).

The case at bar is a single-count money laundering conspiracy case, in which different co-conspirators, including Mr. Adelekan, are alleged to have funneled proceeds from disparate locations to Mr. Baiyewu. When the government charges a single conspiracy, as they have done in this case, joinder is favored. *See* United States v. Simon, 12 F.4th 1, 45 (1st Cir. 2021) (affirming refusal to sever where the government "charged and proved a single conspiracy" and the defendant "was charged and convicted as a coconspirator"); United States v. Drougas, 748 F.2d 8, 18 (1st Cir. 1984) (finding joint trial "most feasible" in a complicated multi-party conspiracy).

Defendant argues that he is prejudiced because he wishes to proceed to trial immediately, he is concerned about spillover, and he wishes to be tried only on evidence properly before the jury. However, he invokes these reasons without citing to any supporting authority, in violation of the local rules. *See* L. Civ. R. 7(a); L. Crim. R. 112. In any case, because he cannot meet his high

burden to demonstrate prejudice as to any of these issues, his motion for severance must be denied.

     i.  <u>Severance for speedy trial</u>

Mr. Adelekan seeks severance so his jury trial can begin as soon as possible. However, Defendant has been at least partly responsible for some of the pretrial delays—for example, he has been represented by three different Criminal Justice Act panel attorneys,[5] has filed several pretrial motions, and is still awaiting discovery productions now that he has chosen to represent himself *pro se*. As discussed further below, there has been no violation of his constitutional right to a speedy trial. Thus, there is no reason to sever his case on speedy trial grounds. *See* <u>United States v. Gianelli</u>, 585 F. Supp. 2d 186, 196 (D. Mass. 2008); *see also* <u>United States v. Michel</u>, 590 F. Supp. 1135, 1136 (D.P.R. 1984) (declining to sever on Speedy Trial Act grounds because such a request would run amiss of the act's legislative intent).

     ii.  <u>Spillover</u>

Spillover occurs when evidence against one defendant is "misinterpreted by the jury and used as the basis for convicting another defendant not connected to that evidence." <u>Drougas</u>, 748

---

[5] A fourth attorney is currently serving as standby counsel.

F.2d at 18. It is difficult for defendants to prevail on spillover arguments in conspiracy cases because almost all of the evidence will pertain and be relevant to all of the co-conspirators. *See* United States v. Morales-Guanill, 77 F. Supp. 3d 258, 262 (D.P.R. 2015) (citing United States v. LiCausi, 167 F.3d 36, 49 (1st Cir. 1999). Construing Defendant's *Motion* liberally, it is possible that he intends to argue that he does not want his trial to be tainted by the acts of his co-conspirators, some of whom participated in schemes involving different geographic areas. He bears the burden, however, of identifying what "specific evidence that would not be admissible against him were he tried separately." Morales-Guanill, 77 F. Supp. 3d at 262 (internal quotation marks and citation omitted). Mr. Adelekan has not borne that burden here. *See also* United States v. Maddux, 917 F.3d 437, 449 (6th Cir. 2019) (finding argument as to spillover conclusory where defendant could not point to specific prejudice).

Moreover, any possibility of spillover can be mitigated by the trial judge's careful differentiation between co-conspirators. *See* Drougas, 748 F.2d at 19 (affirming denial of severance where judge provided jury with instruction that they were to exclude certain witnesses and exhibits from their deliberations regarding one particular co-defendant); United States v. Floyd, 740 F.3d 22, 37 (1st Cir. 2014) (same).

### iii. Evidence

Defendant also seeks to "protect [his] right to be tried only on evidence properly before the jury." (Docket No. 385 at 1). At this juncture, the Court has made no evidentiary rulings and, in fact, no motions *in limine* have been filed in this case. This aspect of Mr. Adelekan's motion is therefore premature and, as with the spillover argument, would likely be cured with a limiting instruction.

Because Defendant cannot establish that he is prejudiced by proceeding to trial with his co-defendants, the Court **DENIES** his motion for severance.

**C. Sixth Amendment Speedy Trial Right**

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. "The right attaches upon arrest or indictment, whichever occurs first." United States v. Santiago-Becerril, 130 F.3d 11 at 21 (1st Cir. 1997). If the right has been violated, the only possible remedy is dismissal of the indictment with prejudice. Strunk v. United States, 412 U.S. 434, 440 (1973).

In Barker, the Supreme Court laid out a four-part balancing test to determine if the Sixth Amendment speedy trial right had been violated. 407 U.S. at 530-33. The district court should

consider: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant. Id. at 530. "None of these factors is 'either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant.'" United States v. Henson, 945 F.2d 430, 437 (1st Cir. 1991) (quoting Barker, 407 U.S. at 533).

### i.   Length of the Delay

The first Barker factor serves both as "a triggering mechanism for the rest of the [speedy trial] analysis, and a factor in that analysis." United States v. Carpenter, 781 F.3d 599, 609 (1st Cir. 2015) (citation omitted). Thus, to trigger an inquiry as to a Sixth Amendment speedy trial violation, a defendant must allege that the length of delay "has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." United States v. Irizarry-Colón, 848 F.3d 61, 68 (1st Cir. 2017) (quoting Doggett v. United States, 505 U.S. 647, 651-52 (1992)). If the defendant establishes that the delay was presumptively prejudicial, the district court considers the excessiveness of the delay as one factor among several. See United States v. Handa, 892 F.3d 95, 101 (citations omitted).

Delay of around one year is presumptively prejudicial. *See* id. at 102; Doggett, 505 U.S. at 652, 652 n.1 (suggesting that one year is "the bare minimum needed to trigger judicial examination of the claim" and noting that prejudice due to delay "intensifies over time"). Here, the speedy trial clock for Sixth Amendment purposes began to run upon the filing of the *Superseding Indictment* on May 31, 2023. *See* (Docket No. 86); Handa, 892 F.3d at 106.[6] The Court considers the period between that date and the current date, as trial has not commenced in this case, yielding a total elapsed time of approximately sixteen months. The First Circuit has found that a fifteen-month delay is presumptively prejudicial in a case that was "more complicated than an ordinary street crime but less so than a serious, complex conspiracy charge." *See* Santiago-Becerril, 130 F.3d at 21-22 (1st Cir. 1997) (citation and internal quotation marks omitted); United States v. Muñoz-Amado, 182 F.3d 57, 61 (1st Cir. 1999) (same, as to nineteen-month delay). Thus, the period of delay was sufficient to "tip the scales slightly" in favor of the defendant's speedy trial claim. Id.

In the case at bar, Mr. Adelekan has shown that the delay is presumptively prejudicial because it has exceeded the one-year

---

[6] Defendant claims that "the total delay is more than three years." (Docket No. 385 at 2). Although Mr. Baiyewu was indicted approximately three years ago, Mr. Adelekan was only indicted in 2023. Defendant would not have standing to raise a claim on Mr. Baiyewu's behalf, and any claim of three years as to his own case is not factually supported.

mark, thereby triggering the remainder of the Sixth Amendment speedy trial analysis. However, this factor contributes only a small weight in his favor, especially given that he has been charged in a complex money laundering conspiracy involving other defendants, multiple schemes, and many locations.

     ii. <u>Reason for the Delay</u>

The second factor is the "focal inquiry" of the speedy trial analysis. <u>Id.</u> at 22 (citation omitted). A district court must determine if delays were attributable to the defendant or to the government. <u>United States v. Souza</u>, 749 F.3d 74, 82 (1st Cir. 2014). "Delays sought by defense counsel are ordinarily attributable to the defendants they represent." <u>Id.</u> (internal alteration and citation omitted). As to the role of the government, deliberate delays weigh heavily in favor of the defendant, while prosecutorial negligence carries less weight. <u>United States v. Perez-Cubertier</u>, 958 F.3d 81, 90 (1st Cir. 2020).

In reviewing the record of this case, the Court finds that much of the delay is due to Defendant's multiple changes of counsel, filing of successive pretrial motions, and the time it took the Court to decide those motions. Mr. Adelekan has changed counsel of record two times before choosing to proceed *pro se*. *See* (Docket Nos. 209, 269, and 345). Additionally, he has filed motions that include: (1) two motions to extend the time to file pretrial

motions, (Docket Nos. 307 and 373); (2) a motion to dismiss, (Docket No. 343); (3) several motions complaining about conditions at MDC Guaynabo, *see, e.g.*, (Docket Nos. 354, 360, and 403); (4) two discovery motions (Docket Nos. 372 and 401); and (5) two motions related to the composition and term of the grand jury, (Docket Nos. 383 and 386). Following the filing of the instant *Motion*, Defendant also continued to file other motions and request an extension of time to file them. *See* (Docket No. 387). When defendants file many pretrial motions, the First Circuit has found that their actions contribute to delay. *See* Souza, 749 F.3d at 82; United States v. Muñoz-Franco, 487 F.3d 25, 60 (1st Cir. 2007); Muñoz-Amado, 182 F.3d at 62.

The record does indicate that the discovery process is still ongoing, especially now that Mr. Adelekan has chosen to proceed *pro se* and additional procedures to provide discovery to him may be needed since he is currently incarcerated. *See* (Docket Nos. 399 and 409). Additionally, the Government requested and received a brief extension of time to file a response, (Docket No. 373). In reviewing the docket and the filings, the Court can discern no bad faith on the part of the Government. Nor has Defendant presented proof of deliberateness of the Government's conduct. *See* Souza, 749 F.3d at 82 (finding that medical leave of an agent needed to

produce documents and need for government to maintain continuity of counsel were valid reasons that justify an appropriate delay).

On balance, having evaluated all the sources of the delay, the Court concludes that Defendant has contributed more to the length of the delay than the Government.

### iii. Assertion of the Speedy Trial Right

"The third factor, the defendant's assertion of his speedy trial right, 'is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right.'" Santiago-Becerril, 130 F.3d at 22 (quoting Barker, 407 U.S. at 531-32). A defendant needs to "give some indication . . . that he wishes to proceed to trial." Santiago-Becerril, 130 F.3d at 22.

Prior to the instant *Motion*, Mr. Adelekan has repeatedly requested that the Court expedite proceedings, and it appears that his decision to proceed *pro se* was motivated by his hope to accelerate a trial date. *See, e.g.*, (Docket No. 266 at 6). As the Court instructed Defendant at the Faretta warning hearing, however, proceeding *pro se* would not necessarily help him achieve the goal of an earlier trial. *See* (Docket No. 382 at 23). Nevertheless, because Mr. Adelekan has consistently insisted that he wishes to proceed to trial as soon as possible, this factor weighs in his favor. *See* Souza, 749 F.3d at 83 (holding, nevertheless, that the third factor did not overcome the weight of

the second and fourth factors and finding no Sixth Amendment
violation occurred).

     iv.  <u>Prejudice to the Defendant</u>

Finally, the last factor "seeks to protect three interests:
avoidance of oppressive pretrial incarceration, minimizing anxiety
and concern, and limiting the possibility that the defense will be
impaired." <u>Carpenter</u>, 781 F.3d at 614 (citations omitted). The
Defendant bears "the burden of alleging and proving specific ways
in which the delay" was unfair or prejudicial. <u>Perez-Cubertier</u>,
958 F.3d at 92. Mr. Adelekan has not done so in this case, so this
factor does not weigh in his favor.

<u>First</u>, with regard to the Defendant's pretrial incarceration,
it is worth noting that the First Circuit has already determined
that nineteen months of pretrial incarceration "is insufficient to
establish a constitutional level of prejudice." <u>Muñoz-Amado</u>, 182
F.3d at 63. The Court recognizes that Defendant alleges that his
pretrial conditions have been onerous due to poor conditions at
Metropolitan Detention Center Guaynabo. Aside from his own
affidavits and motions, he has offered no evidence in support of
this claim in their *Speedy Trial Motion*. To the extent that Mr.
Adelekan wishes to challenge the conditions of his pretrial
detention, those claims should be litigated via either a habeas
corpus petition or civil rights action. *See, e.g.*, <u>United States</u>

v. DeLeon, 444 F.3d 41, 59 (1st Cir. 2006) (indicating pretrial detainees should seek relief through habeas corpus mechanism); Gonzalez-Fuentes v. Molina, 607 F.3d 864, 873 (1st Cir. 2010) (same, but noting claim must proceed as civil rights action). Moreover, Defendant is currently still serving his term of imprisonment for his conviction in his SDNY Case. His expected release date is more than four years away, and thus he can show no prejudice due to pretrial incarceration in the instant case.

Second, Defendant does not appear to make any claim of anxiety and concern. The Sixth Amendment speedy trial right jurisprudence acknowledges that "considerable anxiety normally attends the initiation and pendency of criminal charges," and thus "only 'undue pressures' are considered" when evaluating prejudice. Santiago-Becerril, 130 F.3d at 23 (quoting Henson, 945 F.2d at 438). Because Mr. Adelekan provides no evidence or argument as to emotional distress, he has not established that any anxiety and concern has risen to the level of being prejudicial. See Muñoz-Franco, 487 F.3d at 61.

Third, the Court turns to the "most serious" of the three interests: the possibility of impairment of the defense. Santiago-Becerril, 130 F.3d at 23. This interest is key "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Id. (citing Barker, 407 U.S. at

532). However, to establish prejudice in this arena, a defendant must specifically allege how his defense has been impaired. *See* Muñoz-Amado, 182 F.3d at 63 (finding no prejudice when the defendant did not delineate the alleged prejudice he suffered, the alleged unavailable witnesses, or what the witnesses would have testified to). Again, Mr. Adelekan raises no argument that, *inter alia*, he has lost access to critical evidence or witnesses. In fact, his choice to proceed *pro se* means that he has not yet had a significant ability to receive and review discovery in his case, and he would likely be prejudiced if the Court did not permit him sufficient time to do so.

After balancing the four Barker factors, the Court finds that the Defendant's Sixth Amendment speedy trial right has not been violated. Accordingly, request for dismissal with prejudice on Sixth Amendment grounds is **DENIED.**

**D. The Speedy Trial Act**

Defendant does not appear to move for dismissal on statutory Speedy Trial Act grounds. However, the Government nonetheless argues that the Speedy Trial Act ("STA"), 18 U.S.C. § 3161, was not violated, and out of an abundance of caution, the Court addresses the issue. "The Speedy Trial Act . . . is generally concerned with two periods of delay: delay in bringing an information or indictment after arrest," or pre-indictment delay,

"and delay in commencing trial after information, indictment, or the defendant's first appearance," or post-indictment delay. United States v. Spagnuolo, 469 F.3d 39, 40 (1st Cir. 2006). The post-indictment provision of the STA provides that:

> [i]n any case in which a plea of not guilty is entered, the trial of a defendant charged in an . . . indictment . . . shall commence within seventy days from the filing date . . . of the . . . indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1).

The STA also "contemplates that certain periods of time will be excluded from the computation." United States v. Staula, 80 F.3d 596, 600 (1st Cir. 1996) (citing 18 U.S.C. § 3161(h)). Accordingly, a district court evaluating STA claims must first determine the total time elapsed awaiting trial, and then determine how many days should be excluded. Id. (citations omitted). If the post-indictment provision of the STA is violated, the indictment shall be dismissed on the motion of the defendant, either with or without prejudice. 18 U.S.C. § 3162(a)(2). The defendant has the burden of proof to support the motion for dismissal. Id.

     i.   Aggregate Time Elapsed

The Court begins the Speedy Trial Clock on September 27, 2023, the date of Defendant's initial appearance in the District of

Puerto Rico. (Docket No. 165).[7] The speedy trial period ends on the date a defendant files a motion to dismiss under the STA. Staula, 80 F.3d at 601 (citations omitted). Mr. Adelekan filed the instant *Motion* on August 11, 2024.[8] (Docket No. 124). The date on which the motion was filed is also excluded. Staula, 80 F.3d at 601 (citing United States v. Rodriguez, 63 F.3d 1159, 1163-64 (1st Cir. 1995)). Thus, the aggregate time elapsed for the purpose of this analysis is 319 days.

    ii.  Excludable Days

    In evaluating speedy trial motions, the Court looks to section 3161(h) to determine what time may be excludable. There are several categories of excludable time that are relevant in this case. First, any delay resulting from a proceeding concerning the defendant is excludable, including days during which the defendant appears before the Court. Santiago-Becerril, 130 F.3d at 16 (citing 18 U.S.C. § 3161(h)(1)).

---

[7] Mr. Adelekan was the last-arraigned defendant in this case, and the First Circuit has made clear that "the STA begins to run anew on the date of the last codefendant's arraignment." United States v. Barnes, 251 F.3d 251, 258-59 (1st Cir. 2001) (citing United States v. Baker, 40 F.3d 154, 159 (7th Cir. 1994)). Because his initial appearance in this district occurred before his arraignment, the Court begins the clock on the date of Defendant's initial appearance. *See* United States v. Laureano-Perez, 797 F.3d 45, 58 n.6 (1st Cir. 2015) (suggesting that speedy trial days should be counted from the date of the initial appearance, not the date of arraignment).

[8] The Court uses the prison mailbox rule to determine the filing date of Defendant's motions, since he is proceeding *pro se* while incarcerated. *See* (Docket No. 406 at 5-7) (discussing application).

Second, "delay resulting from any pretrial motion, from the
filing of the motion through" either a hearing on or a disposition
of the motion is excluded. 18 U.S.C. § 3161(h)(1)(D). The First
Circuit has "read the term 'pretrial motion' broadly to encompass
all manner of motions." United States v. Barnes, 159 F.3d 4, 11
(1st Cir. 1998). Additionally, since the *Superseding Indictment* in
this case pertains to all five of the co-defendants, any single
defendant's "motion resulting in excludable time toll[s] the STA
clock for his codefendants." Santiago-Becerril, 130 F.3d at 19
(collecting cases). The speedy trial clock is further tolled for
"delay reasonably attributable to any period, not to exceed thirty
days, during which any proceeding concerning the defendant is
actually under advisement by the court." 18 U.S.C. § 3161(h)(1)(H).
A matter is under advisement when "the court receives all the
papers it reasonably expects." Barnes, 159 F.3d at 12 (citations
and internal quotations omitted).

Third, the Court may toll the speedy trial clock by granting
continuances if it finds that "the ends of justice served by [the
continuance] outweigh the best interest of the public and the
defendant in a speedy trial." *See* 18 U.S.C. § 3161(h)(7)(A). The
presiding district judge must affirmatively articulate the reasons
for the continuance, either orally or in writing, and the findings
must be entered into the record by the time the Court rules on the

defendant's STA motion. <u>United States v. Valdivia</u>, 680 F.3d 33, 39 (1st Cir. 2012) (citing 18 U.S.C. § 3161(h)(7); <u>Zedner v. United States</u>, 547 U.S. 489, 507 (2006)). Although a "formulaic incantation of the 'ends-of-justice' language" is not mandatory, a trial judge must "articulate clearly the reasons" supporting a continuance. <u>Valdivia</u>, 680 F.3d at 40. The Court does not, however, need to "explicitly state its reasons for granting a continuance nor make a best interest finding if it is obvious and set forth in the motion for a continuance." <u>United States v. Laureano-Pérez</u>, 797 F.3d 45, 59 n.8 (1st Cir. 2015) (internal citation and quotation omitted).

For ease of reading, the Court has compiled relevant dates pertaining to Defendant's own court appearances and pretrial motions[9] below:

| Period | Discussion |
|---|---|
| 9/27/2023 (Docket No. 165) | Defendant's initial appearance. Excludable as proceeding involving the defendant. *See* 18 U.S.C. § 3161(h)(1). |
| 10/10/2023 (Docket No. 169) – 10/12/2023 (Docket No. 171) | Defendant's motion for access to related case. Excludable as pretrial motion filed by defendant. 18 U.S.C. § 3161(h)(1)(D). |

---

[9] The Court applied the prison mailbox rule to *pro se* motions to determine the filing date.

| | |
|---|---|
| 10/12/2023 (Docket No. 173) | Defendant's arraignment/bail hearing. Excludable as proceeding involving the defendant. 18 U.S.C. § 3161(h)(1). |
| 10/16/2023 (Docket No. 177) – 12/20/2023 (Docket No. 215) | Status conference. Excludable as proceeding involving the defendant. 18 U.S.C. § 3161(h)(1). The Court also tolled the Speedy Trial Act in the interests of justice and so the defendants could receive and review discovery. 18 U.S.C. § 3161(h)(7)(A). |
| 11/29/2023 (Docket No. 198) – 12/14/2023 (Docket No. 209) | Defendant's motion for change of counsel. Excludable as pretrial motion filed by defendant. 18 U.S.C. § 3161(h)(1)(D). Resolved through hearing, a proceeding involving the defendant. 18 U.S.C. § 3161(h)(1). |
| 12/20/2023 (Docket No. 215) – 2/20/2024 (Docket No. 254) | Status conference. Excludable as proceeding involving the defendant. 18 U.S.C. § 3161(h)(1). The Court also tolled the Speedy Trial Act in the interests of justice and so the defendants could receive and review discovery. 18 U.S.C. § 3161(h)(7)(A). |
| 1/18/2024 (Docket No. 233) – 3/6/2024 (Docket No. 258). | Defendant's informative motion regarding no counsel (later withdrawn). Excludable as pretrial motion filed by defendant. 18 U.S.C. § 3161(h)(1)(D). Resolved through hearing, a proceeding involving the defendant. 18 U.S.C. § 3161(h)(1). |
| 2/20/2024 (Docket No. 254) – 4/23/2024 (Docket No. 283) | Status conference. Excludable as proceeding involving the defendant. 18 U.S.C. § 3161(h)(1). The Court also tolled the Speedy Trial Act in the interests of justice and so the defendants could complete discovery and pursue plea negotiations. 18 U.S.C. § 3161(h)(7)(A). |
| 4/2/24 (Docket No. 266) – 4/11/2024 (Docket No. 269) | Defendant's motion to appoint/change counsel. Excludable as pretrial motion filed by defendant. 18 U.S.C. § 3161(h)(1)(D). Resolved through hearing, a proceeding involving the defendant. 18 U.S.C. § 3161(h)(1). |

| | |
|---|---|
| 4/23/2024 (Docket No. 283) – 7/23/2024 (Docket No. 334) | Status conference. Excludable as proceeding involving the defendant. 18 U.S.C. § 3161(h)(1). The Court also tolled the Speedy Trial Act in the interests of justice and so the defendants could prepare pretrial motions and pursue plea negotiations. 18 U.S.C. § 3161(h)(7)(A). |
| 6/4/2024 (Docket No. 297) – 6/17/2024 (Docket No. 299) | Defendant's motion requesting certain relief and informing court of violations.[10] Excludable as pretrial motion filed by defendant. 18 U.S.C. § 3161(h)(1)(D). Resolved by docket order within 30 days. 18 U.S.C. § 3161(h)(1)(H). |
| 6/18/2024 (Docket No. 301) – 6/27/2024 (Docket No. 313) | Defendant's counsel's response regarding Mr. Adelekan's wish to proceed *pro se*, which was resolved through motion hearing. 18 U.S.C. § 3161(h)(1)(D). |
| 6/27/2024 (Docket No. 313) – 8/6/2025 (Docket No. 345) | Defendant's oral motion to proceed *pro se*. Resolved through <u>Faretta</u> hearing. 18 U.S.C. § 3161(h)(1)(D). |
| 6/23/2024 (Docket No. 307) – 8/30/2024 (Docket No. 310) | Defendant's motion to extend the time to file pretrial motions. An extension was granted until August 30, 2024. 18 U.S.C. § 3161(h)(1)(D). |
| 7/7/2024 (Docket No. 322-1) – 8/6/2024 | Defendant's motion expressing problems with his attorneys and for improper venue (via mail). 18 U.S.C. § 3161(h)(1)(D). Resolved by docket order within 30 days. 18 U.S.C. § 3161(h)(1)(H). |

---

[10] The Court did not include the *pro se* motion filed at Docket No. 298 in this analysis. It was dated March 25, 2024 but the envelope is marked June 4, 2024 by the Defendant and was received by the clerk of court on June 11, 2024. The motion was resolved on June 17, 2024. (Docket No. 300).

| | |
|---|---|
| (Docket No. 344) | |
| 7/23/2024 (Docket No. 334) – 10/3/2024 (Docket No. 400) | Status conference. Excludable as proceeding involving the defendant. 18 U.S.C. § 3161(h)(1). The Court also tolled the Speedy Trial Act in the interests of justice and so the defendants could receive designation of evidence and complete briefs. 18 U.S.C. § 3161(h)(7)(A). |
| 8/6/2024 (Docket No. 343) – 9/23/2024 (Docket No. 406) | Defendant's motion expressing problems with his attorneys and for improper venue (refiled via hand delivery at court hearing). The Government's response was filed on 8/20/24 and Defendant's reply was filed on 8/26/24. (Docket Nos. 361 and 402). Resolved by order and opinion within 30 days. 18 U.S.C. § 3161(h)(1)(H). |
| 8/11/2024 (Docket No. 359) | Instant motion filed. *See* Staula, 80 F.3d at 601 (citing United States v. Rodriguez, 63 F.3d 1159, 1163-64 (1st Cir. 1995)) |

The above chart indicates that the Speedy Trial clock has been continuously tolled since October 16, 2023 due to Defendant's own pretrial motions or his need to receive and review discovery, prepare pretrial motions, and pursue plea negotiations.

Separately, Mr. Baiyewu filed a motion to suppress and for a Franks hearing on June 23, 2023. (Docket No. 98). That motion was supplemented on August 23, 2023. (Docket No. 157). Both motions remain pending, although briefing has now concluded. (Docket No. 407). This motion, as well as any others filed by Mr. Adelekan's co-defendants, has tolled the speedy trial act as to him as well.

*See* <u>Santiago-Becerril</u>, 130 F.3d at 19. Thus, the entire period from September 27, 2023 to August 11, 2024, is excludable.

Because there has been no violation of the Speedy Trial Act, Defendant's requested remedies of either dismissal of the *Superseding Indictment* or jury trial within thirty days are unwarranted. His request is therefore **DENIED.**

### E. Evidentiary Hearing as to MDC Guaynabo Conditions

Finally, Mr. Adelekan requests an evidentiary hearing as to the conditions at MDC Guaynabo. As the Court has explained numerous times, these matters are outside the scope of the instant criminal case. *See* (Docket Nos. 355 and 406 at 8). Defendant is cautioned that he is not to file any more motions in the instant case regarding purported treatment and conditions at MDC Guaynabo insofar as he has not exhausted administrative remedies. The petition for an evidentiary hearing is **DENIED.**

### III. CONCLUSION

For the foregoing reasons, the Court **ORDERS** that Defendant Oluwaseun Adelekan's *Motion to Reveal the Deal* at Docket No. 359 and *Motion to Sever Defendant* at Docket No. 385 are hereby **DENIED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of September 2024.

s/Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE